UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: CAMERON | : | |
| | : | CIVIL ACTION NO. |
| NORMAN GEORGE CAMERON, | : | 3:18-CV-01165 (JCH) |
|     Appellant, | : | |
| | : | |
| v. | : | MARCH 27, 2019 |
| | : | |
| PHH MORTGAGE CORPORATION, | : | |
|     Appellee. | : | |

**RULING RE: MOTION TO DISMISS APPEAL (DOC. NO. 11)**

**I.    INTRODUCTION**

Norman George Cameron ("Mr. Cameron") filed this appeal pro se from an Order of the United States Bankruptcy Court for the District of Connecticut ("the Bankruptcy Court"). See generally Notice of Appeal from Bankruptcy Court ("Appeal") (Doc. No. 1). The Order denied Mr. Cameron's Motion for Reconsideration of the Bankruptcy Court's prior Order, which prior Order granted appellee PHH Mortgage Corporation ("PHH") in rem relief from an automatic stay as to property located at 631 Bloomfield Avenue, Bloomfield, Connecticut 06002 ("the Property").[1] See Order Denying Motion to Reconsider (Doc. No. 40), In re Cameron, No. 18-20369 (Bankr. D. Conn.) ("Second Bankruptcy Action"); Ruling on Motion for In Rem Relief from Stay ("Order Lifting Stay") (Doc. No. 27), Second Bankruptcy Action. PHH now moves to dismiss Mr. Cameron's Appeal. See Motion to Dismiss Appeal (Doc. No. 11).

For the reasons discussed below, PHH's Motion to Dismiss is granted.

---

[1] Because a bankruptcy order that lifts an automatic stay is a final order, this court has jurisdiction over Mr. Cameron's appeal pursuant to section 158(a) of title 28 of the United States Code. See In re Pegasus Agency, Inc., 101 F.3d 882, 885 (2d Cir. 1996).

1

## II. BACKGROUND

On June 24, 2010, PHH filed a foreclosure action in Connecticut Superior Court against Mr. Cameron and his wife ("Mrs. Cameron") (collectively, "the Camerons"), seeking to foreclose on the Property ("the Foreclosure Action").  See PHH Mortg. Co. v. Cameron, No. HHDCV106012369S, 2017 WL 4508613, at *1 (Conn. Super. Ct. Aug. 29, 2017) (summarizing the history of the Foreclosure Action).  After addressing numerous motions, including motions to strike, motions to dismiss, motions for nonsuit, and motions for summary judgment, the Superior Court held a two-day trial on October 6 and October 17, 2015.  See id.  On April 29, 2016, the Superior Court ruled in favor of PHH, concluding that:

> [T]he plaintiff [PHH] has established its prima facie case for foreclosure: the plaintiff is the current owner and holder of the underlying Note; the Note is endorsed in blank; the plaintiff and/or their agents have been in possession of the original note since prior to the start of this foreclosure action; when this suit was commenced, the owner of the Note, Fannie Mae, authorized the plaintiff to act as servicer of this loan including bring [sic] a foreclosure action in servicer's name; the plaintiff is the current mortgagee of record; the plaintiff issued a written notice of default to the defendant; the defendant failed to cure the underlying default; and the loan is in default and currently due for the October 1, 2007, mortgage payment.

PHH Mortg. Corp. v. Cameron, No. HHDCV106012369S, 2016 WL 2935570, at *9 (Conn. Super. Ct. Apr. 29, 2016).  The Superior Court also rejected all eighteen special defenses raised by the Camerons, as well as all of their counterclaims.  Id. at *10.

On June 14, 2016, the Superior Court entered a Judgment of Strict Foreclosure and set the law day for August 1, 2016.  See Judgment of Strict Foreclosure (Doc. No. 283.50), PHH Mortg. Corp. v. Cameron, No. HHD-CV10-6012369-S (Conn. Super. Ct.) ("Foreclosure Action"); Order (Doc. No. 276.10), Foreclosure Action.  Under Connecticut law, if the law day runs without the mortgagor redeeming legal title to the mortgaged

property, the absolute title to the property passes to the mortgagee on that date. See Sovereign Bank v. Licata, 178 Conn. App. 82, 97 (2017).

On August 1, 2016, the date of the law day, Mrs. Cameron filed for bankruptcy relief under Chapter 7. See generally Chapter 7 Voluntary Petition (Doc. No. 1), In re Cameron, No. 16-21256 (Bankr. D. Conn.) ("First Bankruptcy Action"). Pursuant to section 362(a)(1) of title 11 of the United States Code, Mrs. Cameron's filing of a bankruptcy petition created an automatic stay against the Foreclosure Action. See Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994) ("[T]he filing of a bankruptcy petition creates an automatic stay against the commencement or continuation of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case.") (internal quotation marks and alterations omitted) (quoting 11 U.S.C. § 362(a)(1)). Accordingly, the law day in the Foreclosure Action was reset for after the completion of the bankruptcy proceeding. See Order (Doc. No. 302.86), Foreclosure Action, at 1 (rescheduling the law day in the Foreclosure Action for March 19, 2018).

On May 31, 2017, PHH moved the Bankruptcy Court to lift the automatic stay as to the Property. See generally Motion for Relief from Automatic Stay (Doc. No. 29), First Bankruptcy Action. After holding a hearing on the matter, in which both Mr. and Mrs. Cameron participated, the Bankruptcy Court lifted the automatic stay as to the Property, reasoning that:

> Res judicata, collateral estoppel and the Rocker [sic] Feldman doctrine bar the Debtor's re-litigation of the Debtor's alleged defenses and claims and bind this Court to the judgment of the Superior Court. The claims and defenses of the Debtor and her husband were previously raised and fully adjudicated at trial at [t]he Superior Court and are spurious, dilatory and utterly without merit. To the extent [that] such defenses and claims are

3

further prosecuted, the Court will entertain appropriate requests for sanctions.

Order Granting PHH Mortgage Corporation Relief from Stay (Doc. No. 46), First Bankruptcy Action, at 1. Mrs. Cameron subsequently filed a Motion for Reconsideration of the Bankruptcy Court's decision to lift the automatic stay. See Motion to Reconsider (Doc. No. 53), First Bankruptcy Action. After holding a hearing on the matter, the Bankruptcy Court denied the Motion, noting that:

> The Court, having reviewed the docket and rulings in this matter (and the State Court decisions) and considered the arguments advanced at its hearings and in the papers related to the Debtor's myriad requests for reconsideration, hereby denies any reconsideration of its ruling on the Motion for Relief from Stay. The abusive, dilatory and misguided efforts and arguments of Mr[.] and Mrs[.] Cameron have fueled interminable, wasteful, duplicative and dilatory proceedings. Neither the Debtor nor her husband have been credible in these matters or the State Court and their repetitive and strained arguments have been found to be meritless after plenary proceedings in the State Court.

Order on Motion to Reconsider (Doc. No. 75), First Bankruptcy Action. On December 19, 2017, Mrs. Cameron appealed the Bankruptcy Court's denial of reconsideration to this District Court (Thompson, J.), which appeal was ultimately dismissed for failure to pay the requisite filing fee or obtain a fee waiver. See Order (Doc. No. 7), In re Cameron, No. 17-cv-02142-AWT (D. Conn.).

On July 12, 2017, while PHH's Motion for Relief from Stay was still pending before the Bankruptcy Court, Mrs. Cameron initiated an Adversary Proceeding in the Bankruptcy Court against PHH and various other entities. See generally Complaint (Doc. No. 1), Cameron v. PHH, No. 17-02033 (Bankr. D. Conn.) ("Adversary Proceeding"). In her Complaint, she requested an injunction prohibiting these defendants from foreclosing on the Property; a determination that all liens encumbering

4

the Property were unsecured and void; and compensatory and punitive damages. See id. at 7.  Mrs. Cameron argued that she was entitled to this relief because, inter alia, the assignment of the mortgage to PHH was a fraudulent conveyance and the defendants lacked standing to bring the Foreclosure Action.  See id. at 4–6.

On February 1, 2018, the Bankruptcy Court granted the defendants' Motion to Dismiss the Adversary Proceeding, reasoning that the Rooker-Feldman doctrine, res judicata, and collateral estoppel barred Mrs. Cameron from asserting her claims.  See Rulings and Order on Defendants' Motions to Dismiss and Plaintiff's Motion to Amend Complaint (Doc. No. 42), Adversary Proceeding, at 12, 13, 15, 24.  In addition, the Bankruptcy Court granted the defendants' Motion for Sanctions, awarding the defendants "twice their reasonable fees and expenses, incurred in connection with these bankruptcy proceedings[.]"  Id. at 24.  In awarding sanctions, the Bankruptcy Court noted that "the unabashed vigor of the Camerons and their repetitive assaults upon the Movants have remained undeterred despite multiple judicial admonitions."  Id. at 23.  The Bankruptcy Court also highlighted "the Debtor's elusive, false, misleading and spurious filings and her repeated use of the Court system to delay an inevitable and fully litigated foreclosure."  Id.  Mrs. Cameron subsequently appealed the Bankruptcy Court's dismissal of her Adversary Proceeding, which dismissal was ultimately affirmed by this District Court (Thompson, J.).  See Ruling on Bankruptcy Appeal (Doc. No. 14), In re Cameron, No. 18-cv-00289-AWT (D. Conn.), at 3.

After the Bankruptcy Court lifted the automatic stay as to the Property, the State Trial Court set a new law day in the Foreclosure Action for March 19, 2018.  Order (Doc. No. 302.86), Foreclosure Action.  However, on March 19, 2018, Mr. Cameron filed for

5

bankruptcy under Chapter 7, thereby staying the running of the law day for a second time. See Chapter 7 Voluntary Petition (Doc. No. 1), In re Cameron, No. 18-20369 (Bankr. D. Conn.) ("Second Bankruptcy Action"); see also Order (Doc. No. 332.86), Foreclosure Action (resetting the law day for October 15, 2018).

On May 11, 2018, PHH moved the Bankruptcy Court to lift the automatic stay as to the Property. See generally Motion for Relief from Stay, In Rem Order and Related Equitable Relief (Doc. No. 13), Second Bankruptcy Action. In particular, PHH requested an order granting in rem relief from the automatic stay in order to prevent the Camerons, or any other debtor, from impeding the completion of the Foreclosure Action by initiating additional bankruptcy proceedings. See id. at 3.

Mr. Cameron objected to PHH's Motion, and the Bankruptcy Court scheduled a hearing for June 18, 2018. See Objection (Doc. No. 14), Second Bankruptcy Action; Hearing Rescheduled (Doc. No. 21), Second Bankruptcy Action. Notice of the Hearing was given to Mr. Cameron. See Certificate of Notice (Doc. No. 22), Second Bankruptcy Action. However, Mr. Cameron did not attend the Hearing, instead filing a motion to continue on the morning of June 18. See Motion to Continue the Hearing (Doc. No. 23), Second Bankruptcy Action. The Bankruptcy Court denied Mr. Cameron's Motion and proceeded to hold the Hearing, reasoning that (1) the Motion was belatedly filed, and (2) Mr. Cameron had made no effort to confer with opposing counsel before seeking a continuance of the Hearing. See Order Lifting Stay, Second Bankruptcy Action, at 1 n.2.

On June 19, 2018, the Bankruptcy Court granted PHH's Motion for In Rem Relief from the Automatic Stay. See id. at 2. In a two-page Ruling that incorporated by

reference its previous rulings in Mrs. Cameron's bankruptcy action, the Bankruptcy Court found that Mr. and Mrs. Cameron had engaged in "[a] pattern of dilatory, meritless and abusive filings to date." Id. at 1. It therefore lifted the automatic stay as to the Property, pursuant to sections 362(d)(1) and (d)(4) of title 11 of the United States Code. See id. at 2.

Mr. Cameron subsequently filed a motion to reconsider the lifting of the automatic stay, which Motion was denied by the Bankruptcy Court on June 29, 2018. See Order Denying Motion to Reconsider (Doc. No. 37), Second Bankruptcy Action. On July 13, 2018, Mr. Cameron filed the instant Appeal, seeking to overturn the Bankruptcy's denial of reconsideration. See Appeal at 1. PHH then filed its Motion to Dismiss the Appeal (Doc. No. 11), which Motion is now pending before this court.

### III. STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed de novo, its findings of fact are reviewed for clear error, and its decision to grant relief from an automatic stay is reviewed for abuse of discretion. See In re Bennett Funding Grp., Inc., 146 F.3d 136, 138 (2d Cir. 1998).

A court "abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." E.E.O.C. v. KarenKim, Inc., 698 F.3d 92, 99-100 (2d Cir. 2012) (internal quotation marks omitted). A factual finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Zervos v. Verizon New York,

Inc., 252 F.3d 163, 168 (2d Cir. 2001). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (U.S. 1985)).

**IV.    DISCUSSION**

In granting PHH relief from the automatic stay as to the Property, the Bankruptcy Court relied on sections 362(d)(1) and (d)(4) of title 11 of the United States Code. These provisions of the Bankruptcy Code provide:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> >  . . . or
> >
> > (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--
> >
> > > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> > >
> > > (B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362.

Mr. Cameron, who is acting pro se, appears to argue that PHH is not "a party in interest" and therefore does not have standing to seek relief from the stay. See Memorandum of Law in Support of Appellant's Opposition to Motion to Dismiss Appeal

8

("Cameron's Opp'n") (Doc. No. 15-1) at 2-3.[2]  Below, the court will address Mr. Cameron's arguments, as well as whether the Bankruptcy Court abused its discretion in finding that Mr. Cameron's bankruptcy action satisfied the conditions for relief from an automatic stay under sections 362(d)(1) and (d)(4) of the Bankruptcy Code.

   A.   Party in Interest

Only "a party in interest" is entitled to seek relief from an automatic stay under section 362(d).  In re Comcoach Corp., 698 F.2d 571, 573 (2d Cir. 1983); In re Everton Aloysius Sterling, 543 B.R. 385, 390 (Bankr. S.D.N.Y. 2015).  The term "party in interest" is not defined in the Bankruptcy Code.  In re Comcoach, 698 F.2d at 573.  However, the Second Circuit has held that, in order to invoke the Bankruptcy Court's jurisdiction to obtain relief from an automatic stay, the moving party "must be either a creditor or a debtor[.]"  Id.; see also In re Mims, 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010).  The Bankruptcy Code, in turn, defines a creditor to include an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(10)(A).  A "claim" is defined to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A).

Relevant to this case, the Supreme Court has held that a mortgage qualifies as a "right to payment" against the debtor in a bankruptcy proceeding.  See Johnson v. Home State Bank, 501 U.S. 78, 82 (1991) ("A mortgage is an interest in real property

---

[2] In addition to his Opposition to PHH's Motion to Dismiss, Mr. Cameron filed two supplemental briefs, both of which repeat the arguments found in his Opposition.  See generally Statement of the Case (Doc. No. 22); Amended Brief (Doc. No. 23).

9

that secures a creditor's right to repayment."); id. at 84 ("[A] surviving mortgage interest is a 'claim' under § 101(5)[.]").  Accordingly, the holder of a mortgage is a "party in interest" who is entitled to seek relief from an automatic stay.  See, e.g., In re Sterling, 737 F. App'x 52, 53 (2d Cir. 2018) ("The creditor is a proper party to the action to lift the automatic stay because, as holder of the note and allonge, it could seek foreclosure in state court, and is therefore a 'party in interest.'"); In re Reddy, No. 16-50689 (JAM), 2017 WL 2484825, at *4 (Bankr. D. Conn. June 8, 2017) (finding that the creditor was entitled to seek relief from a stay as to the debtor's mortgage in light of a state court's final judgment of strict foreclosure).

In this case, PHH argues that the Connecticut Superior Court already resolved the issue of whether PHH is a "party in interest" when that Court determined that PHH was the holder and owner of the mortgage on the Property.  See Memorandum of Law in Support of PHH Mortgage Corporation's Motion to Dismiss ("PHH's Mem.") (Doc. No. 13) at 4-9.  PHH argues that collateral estoppel and the Rooker-Feldman doctrine bar Mr. Cameron from relitigating these findings in Bankruptcy Court, and that the Bankruptcy Court therefore did not err in concluding that PHH was a party in interest entitled to seek relief from the automatic stay.[3]  See id.  In response, Mr. Cameron argues that PHH is not a party in interest because PHH does not own the mortgage on the Property.  See Cameron's Opp'n at 2-3.  In addition, Mr. Cameron appears to argue that the Superior Court's Judgment of Strict Foreclosure does not act as a bar because

---

[3] PHH also argues that res judicata bars Mr. Cameron from challenging its standing to seek relief from the automatic stay.  However, because the court will conclude that both the Rooker-Feldman doctrine and collateral estoppel apply, see, infra, at 11-15, it need not decide whether res judicata, a rule of claim preclusion, also precludes Mr. Cameron from litigating the issue of whether PHH is a party in interest.

10

that Judgment was based on fraudulent representations made by PHH during the Foreclosure Action. See id. at 8-10.

Under the Rooker-Feldman doctrine, "inferior federal courts have no subject matter jurisdiction over cases that effectively seek review of judgments of state courts[.]" Moccio v. New York State Office of Admin., 95 F.3d 195, 197 (2d Cir. 1996). This doctrine applies when four conditions are met: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." McKithen v. Brown, 626 F.3d 143, 154 (2d Cir. 2010). The Rooker-Feldman doctrine bars not only suits that seek direct review of judgments of state courts, but also those "that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004). A federal action "is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Id. (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

In this case, Mr. Cameron's Appeal satisfies the requirements of the Rooker-Feldman doctrine. Mr. and Mrs. Cameron lost the Foreclosure Action. See, supra, at 2-3. The Superior Court entered its Judgment of Strict Foreclosure on June 14, 2016, well before Mr. Cameron filed his Chapter 7 bankruptcy petition on March 19, 2018. See, supra, at 2, 5. In appealing the Bankruptcy Court's decision to lift the stay as to the Property, Mr. Cameron effectively seeks review of the Superior Court's Judgment, arguing that PHH is not a party in interest because it does not own the mortgage on the

11

Property.  See Cameron's Opp'n at 4-9.  The issue of who holds the mortgage is inextricably intertwined with the Superior Court's Judgment of Strict Foreclosure, because foreclosure may only be granted under Connecticut law when the foreclosing party has proven by a preponderance of the evidence that "it was the owner of the note and mortgage[.]"  See Webster Bank v. Flanagan, 51 Conn. App. 733, 750–51 (1999).  Thus, Mr. Cameron's claim that PHH is not a party in interest succeeds only to the extent that the Superior Court wrongly decided the Foreclosure Action.

Nor can Mr. Cameron avoid application of the Rooker-Feldman doctrine by asserting that the Superior Court's Judgment was "procured by [PHH's] [f]raudulent misrepresentations and submissions."  Cameron's Opp'n at 9.  Rooker-Feldman applies even when a party argues that the prior judgment "was obtained through a fraudulent scheme to interfere with the judicial process[.]"  Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co., 664 F. App'x 20, 21 (2d Cir. 2016); see also Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) ("To the extent [the plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, Rooker-Feldman bars [his] claim.").[4]  Accordingly, the Rooker-Feldman doctrine bars Mr. Cameron from relitigating the issue of whether PHH holds the mortgage on the Property.

---

[4] This court recognizes that "[t]he Rooker-Feldman doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment." Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co., 664 F. App'x 20, 21 (2d Cir. 2016) (citing Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014)).  However, this exception for monetary fraud claims does not apply to Mr. Cameron's pending Appeal.  This court is not reviewing the Bankruptcy Court's ruling on any fraud claims for damages brought by Mr. Cameron.  Instead, it is merely reviewing the Bankruptcy Court's decision to lift the automatic stay, which decision rests on the propriety of the Superior Court's Judgment of Strict Foreclosure.

12

Moreover, even if Rooker-Feldman did not apply, the doctrine of collateral estoppel would preclude review of this issue. When determining the preclusive effect of a state court proceeding, federal courts must apply the preclusion law of the state in which judgment was rendered. See In re Mulligan, No. 18-1657, 2019 WL 1034746, at *2 (2d Cir. Mar. 5, 2019) (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)). In Connecticut, collateral estoppel "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." Trikona Advisers Ltd. v. Chugh, 846 F.3d 22, 32 (2d Cir. 2017) (internal quotation marks omitted). "An issue decided against a party in a prior proceeding may not be relitigated if: (1) it was fully and fairly litigated in the first action; (2) it was actually decided; and (3) the decision was necessary to the judgment." Id. (internal quotation marks omitted). A decision was necessary to the judgment "if in the absence of a determination of the issue, the judgment could not have been validly rendered." Id. (internal quotation marks omitted). Conversely, "if an issue has been determined, but the judgment is not dependent on the determination of the issue, the parties may relitigate the issue in a subsequent action." Id. (internal quotation marks and alterations omitted).

In the Foreclosure Action, Mr. Cameron argued the same issues that he now raises in federal court, namely: that "[PHH] never obtained any lawful interest or chain of title in [Mr. Cameron's] issued Mortgage deed" because, inter alia, (1) PHH made false representations as to the loan, (2) PHH proceeded with the Foreclosure Action without proper documentation of the mortgage note, (3) the assignments of the mortgage to PHH were fraudulent conveyance; and (4) PHH failed to comply with certain notice

13

requirements. See Cameron's Opp'n at 3-5, 9, 10, 11. The Superior Court rejected these arguments during the motions stage of the Foreclosure Action and, again, after two days of trial, finding that there was no evidence to support these assertions. See PHH, 2016 WL 2935570, at 8–*10 (addressing the issue of whether PHH had standing to seek foreclosure, as well as the various defenses and counterclaims asserted by the Camerons); see also Memorandum of Decision Re: Motion to Strike (Doc. No. 144.00), Foreclosure Action, at 30 (striking 24 of the 28 special defenses asserted by the Camerons). In reaching this conclusion, the Superior Court expressly discredited the testimony of Mr. Cameron and his wife, concluding that they had "committed outright perjury." Id. at *7. Thus, the issue of whether PHH was the holder and owner of the mortgage on the Property, as well as any issues pertaining to PHH's allegedly fraudulent conduct in the Foreclosure Action, were fully and fairly litigated in state court and decided against Mr. Cameron.

Moreover, those decisions were necessary to the Superior Court's Judgment of Strict Foreclosure because (1) the foreclosing party must "prove by a preponderance of the evidence that it was the owner of the note and mortgage" in order to obtain such a Judgment, Webster Bank, 51 Conn. App. at 750–51; and (2) "a finding of fraud during the foreclosure proceedings otherwise would have warranted granting [the Camerons] relief from judgment," Peterson v. Wells Fargo Tr., 721 F. App'x 13, 17 (2d Cir. 2018) (citing Wells Fargo Bank, N.A. v. Melahn, 148 Conn. App. 1, 9 (2014)). As a result, collateral estoppel precludes Mr. Cameron from attacking in the bankruptcy proceeding the Superior Court's finding that PHH is the mortgagee on the Property.

In sum, the Superior Court's Judgment of Strict Foreclosure is binding on lower federal courts. The Bankruptcy Court, therefore, did not err in concluding that PHH was the holder of the mortgage on the Property. Thus, because a mortgage interest secures a creditor's right to payment, the Bankruptcy Court properly decided that PHH was a party in interest entitled to seek relief from the automatic stay as to the Property.

B. Sections 362(d)(1) and (d)(4)

The Bankruptcy Court did not abuse its discretion in concluding that Mr. Cameron's bankruptcy case satisfied the conditions for lifting an automatic stay, as set forth in sections 362(d)(1) and (d)(4) of the Bankruptcy Code. Pursuant to section 362(d)(1), an automatic stay may be lifted "for cause." Cause exists when a bankruptcy court finds that a bankruptcy filing was made in bad faith. Holt v. JP Morgan Chase Bank, N.A., No. 17-CV-07901 (NSR), 2019 WL 192298, at *1 (S.D.N.Y. Jan. 15, 2019). A number of factors may be indicative of a bad faith filing, including (1) "the debtor's filing demonstrates an intent to delay or otherwise frustrate the legitimate efforts of secured creditors to pursue their rights," id.; (2) the debtor has filed multiple bankruptcy petitions, In re AMC Realty Corp., 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001); and (3) the debtor filed his bankruptcy petition "on the eve of a foreclosure," In re Eclair Bakery Ltd., 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000). Thus, in many respects, the bad faith inquiry under section 362(d)(1) overlaps substantially with the court's analysis under section 362(d)(4), which section authorizes the lifting of an automatic stay when the bankruptcy court finds that the debtor has engaged in multiple bankruptcy filings as part of "a scheme to delay, hinder, or defraud creditors." See In re Misenti, No. 17-51282 (JAM), 2018 WL 3013199, at *2 (Bankr. D. Conn. June 14, 2018) (observing that the close timing between the debtor's bankruptcy petition and foreclosure sale date was

15

evidence of a scheme to hinder, delay, and defraud creditors); In re Procel, 467 B.R. 297, 308 (S.D.N.Y. 2012) (noting that "bankruptcy courts may infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone") (internal quotation marks omitted).

The record in this case is ladened with evidence showing that the Camerons acted in bad faith and with an intent to delay the completion of the Foreclosure Action. On two separate occasions, they filed a bankruptcy petition on the precise date on which the law day was scheduled to run, thereby delaying PHH from obtaining absolute title to the Property. See, supra, at 3, 5. While, on paper, Mr. and Mrs. Cameron filed for bankruptcy individually, the Bankruptcy Court did not err by concluding that the two were acting in concert when they filed and prosecuted their bankruptcy petitions. See Order Lifting Stay, Second Foreclosure Action, at 1. Not only did Mr. and Mrs. Cameron raise nearly identical arguments in opposing the lifting of the automatic stay, but Mr. Cameron even participated in the hearings held in his wife's bankruptcy proceeding. See, supra, at 3.

Nor did the Bankruptcy Court err in finding that the Camerons have engaged in groundless and repetitive litigation. See In re Khan, 593 F. App'x 83, 85 (2d Cir. 2015) (upholding the bankruptcy court's finding of bad faith where the record revealed "[a] general pattern of groundless litigation in the bankruptcy courts, premised not on actual disputes . . . but rather on frivolous, obstructive objections to the bankruptcy system"). In its first decision to lift the automatic stay in Mrs. Cameron's bankruptcy action, the Bankruptcy Court expressly noted that "[t]he claims and defenses of [Mrs. Cameron] and her husband were previously raised and fully adjudicated at trial in [t]he Superior

16

Court and are spurious, dilatory and utterly without merit." See, supra, at 3-4. The Bankruptcy Court further warned that, "[t]o the extent [that] such defenses and claims are further prosecuted, the Court will entertain appropriate requests for sanctions." Id. Nevertheless, Mrs. Cameron raised those same claims and defenses in her subsequent Adversary Proceeding against PHH. See id. at 5. Indeed, even after the Bankruptcy Court followed through on its warning and sanctioned Mrs. Cameron for frivolous litigation, Mr. Cameron's raises those same arguments again in his presently pending Appeal before this court. Compare Rulings and Order of Defendants' Motion to Dismiss and Plaintiff's Motion to Amend Complaint (Doc. No. 11-3), Adversary Proceeding, at 9 (summarizing the ten counts alleged by Mrs. Cameron in the Adversary Proceeding) with Cameron's Opp'n at 1, 2.

Accordingly, there is a clear basis in the record for concluding that Mr. Cameron, together with his wife, have successfully used the bankruptcy courts to hinder and delay the Foreclosure Action and to prevent PHH from acquiring absolute title to the Property. See In re PDPA, Inc., No. 3:11CV1907 DJS, 2012 WL 2154183, at *4 (D. Conn. June 12, 2012) (affirming the bankruptcy court's lifting of an automatic stay where there was a "clear record of the Appellants' successful use of legal proceedings to delay the state court foreclosure proceedings for several years"). Indeed, it appears that the Camerons's bankruptcy litigation is part of a broader strategy to use legal proceedings to forestall foreclosure. In particular, the Camerons have filed a number of state court appeals in the Foreclosure Action, each of which would ordinarily toll the running of the law of day. See PHH, 2017 WL 4508613, at *1 (summarizing the Camerons's history of appeals). On August 29, 2017, however, the Superior Court prospectively terminated

all stays that might arise from future appeals taken by the Camerons. Id. at *3. Noting that a court can take prospective action "to terminate repetitive, automatic stays which, when so misused, can create a proverbial perpetual motion machine preventing a case from ever concluding," id. at *2 (internal quotation marks omitted), the Court found that such relief was warranted in this case because the Camerons's "appeals were taken solely for the purpose of delay." Id. at *3.

Thus, in light of the abundance of evidence regarding the Camerons's bad faith scheme to hinder and delay the completion of the Foreclosure Action, the Bankruptcy Court did not abuse its discretion in lifting the automatic stay pursuant to section 362 of the Bankruptcy Code.

## V. CONCLUSION

For the foregoing reasons, PHH's Motion to Dismiss is granted, and the Bankruptcy's Order is affirmed. The Clerk is directed to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of March, 2019.

/s/ Janet C. Hall _____
Janet C. Hall
United States District Judge